IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **STEPHEN C. SIEBER,** *et al.,* | * | |
| | * | |
| Appellant | * | |
| | * | |
| v. | * | Civil Action No. RWT 12-210 |
| | * | (Ch. 7 Bankruptcy Ct. Case No. 07-21192) |
| **CHERYL E. ROSE,** | * | |
| | * | |
| Appellee. | * | |
| | * | |
| | ****** | |

## MEMORANDUM OPINION

Appellant, proceeding *pro se*, appeals the order sustaining objections to the Debtor's amended claim of exemptions in Bankruptcy Case No. 07-21192-WIL entered by Judge Wendelin I. Lipp of the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court").  For the reasons discussed below, the Court concludes that the Bankruptcy Court did not err in finding that allowing the Appellant to amend his exemptions would prejudice the Trustee and the Estate's creditors, and accordingly, the order of the Bankruptcy Court will be affirmed.

## BACKGROUND

On November 7, 2007, the Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code.  *See* Bankr. Case No. 07-21192-WIL, Doc. No. 1.  On November 26, 2008, the Bankruptcy Court appointed Cheryl E. Rose as the Chapter 11 Trustee.  *Id.* Doc. No. 165. On July 20, 2009, the Trustee filed a motion to convert the case from a case under Chapter 11 to one under Chapter 7.  *Id.* Doc. No. 215.  On August 20, 2009, the Bankruptcy Court granted the

Trustee's motion, converted the case into one proceeding under Chapter 7, and appointed Cheryl E. Rose as the Chapter 7 Trustee.  *Id.* Doc. No. 239.

On November 7, 2007, Appellant filed a Schedule B – Personal Property.  *Id.*  Doc. No. 3 at 9-10. It provided that he was a general partner in S.C.S. Contracting Group, L.P. ("SCS") and listed the value of his interest in SCS as $1.00.  *Id.*  Doc. No. 1 at 2.  The Schedule B listed Appellant's 42.5% interest in Westmark International, Inc., which he valued at $42,500.  *Id.* Appellant also listed his interest in a lawsuit entitled *Sieber, et al. v. Brownstone Publishing Company, et al.*, No. 2548-07, filed in the Superior Court of the District of Columbia (the "Litigation").[1]  Appellant valued the Litigation at $12,565,000, which is the most valuable asset in the Estate.  On November 7, 2007, Appellant also filed his Schedule C- Property Claimed as Exempt.  *Id.*  Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(5), Appellant claimed a $1.00 exemption in SCS and a $251.00 exception in Westmark.  *Id.* at 12.  The Litigation was not listed as exempt in Appellant's Schedule C.

On September 29, 2010,[2] the Appellant filed a second amended Schedule B and an amended Schedule C.  The second amended Schedule B listed the value of the Appellant's interest in SCS as unknown, in Westmark as $42,000, and in the Litigation as $12,565,000.  *Id.* Doc. No. 424 at 8.  Appellant's amended Schedule C claimed a $251.00 exception in SCS pursuant to Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(5).  *Id.* at 11.  Appellant also listed his interest in the Litigation and SCS's interest in the Litigation in the amended Schedule C.  Both

---

[1] A search of the District of Columbia Courts' website indicates that the Litigation Case No. is 2007-CA-2549B.

[2] On April 9, 2008, Appellant filed an amended Schedule B.  Bankr. Case No. 07-21192 Doc. No. 95.  The descriptions and values listed in the Amended Schedule B for SCS, Westmark, and the Litigation are identical to those listed in Appellant's original Schedule B.

interests in the Litigation claimed exceptions of $6,282,000, for a total of $12,564,000, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 11-504(b)(2).  *Id.*

The Trustee opposed the amended Schedule C and argued that the exemption to the Litigation was filed in bad faith and would prejudice the creditors of the Estate.  *Id.* at Doc. No. 435.  As to bad faith, the Trustee maintained that "the Debtor has actively attempted to hinder the administration of the Estate" at a cost of hundreds of thousands of dollars to the Estate.  *Id.* at 6.  As to prejudice, the Trustee argued that "creditors in this case relied upon the original schedules filed by the Debtor" to their detriment.  *Id.* at 8.  The Trustee claimed:

> The failure to claim an exemption supported the Debtor's efforts to reorganize through Chapter 11.  Throughout the Chapter 11 proceedings and the Chapter 11 and initially in the Chapter 7 proceeding, the Debtor stated that he wanted the proceeds of the Litigation to be used to pay his creditors.  Based on the Debtor's actions, the Chapter 11 Trustee and the Chapter 7 Trustee have administered the Litigation.  At the same time, the creditors have patiently waited for a return while the Debtor interfered with the administration of the Estate.

*Id.*

Angie's List, Inc., a creditor of the Estate, also opposed the amended Schedule C.  *Id.* Doc. No. 444.  Angie's List stated that it "has relied upon the fact that SCS and the Litigation were both part of the bankruptcy estate since the inception of the Debtor's case."  *Id.* at 2.  It suggested that "[t]he Debtor is finally grasping straws and his last futile attempt is to claim that the Litigation and his ownership interest in SCS are both exempt—three years after he filed bankruptcy.  This attempt is purely done in bad faith and it prejudices everyone involved."  *Id.* at 3.  Angie's List maintained that "[t]he Litigation and his ownership in SCS are the Debtor's only assets, and if they were now held to be exempt, the last three years would be a complete waste of resources for this Court and for all of the Debtor's creditors."  *Id.* at 4.

The Appellant filed a reply to the oppositions.  *Id.* Doc. No. 446.  He maintained that "[t]he Trustee's motive for assisting Angie's List was personal enrichment in the form of a preconceived settlement of the [Litigation] that would pay the Trustee's jacked up legal fees with no monies paid to creditors."  *Id.* at 2-3.    The Appellant alleged that the "Trustee also threatened the debtor with contempt proceedings if he attempted to file amended schedules."  *Id.* at 3.   He argued that "[t]he Trustee and Angie's List should have never embarked on a conspiracy to wrongfully administer the personal injury asset of a pro-se debtor."  *Id.*

On December 27, 2011, Judge Lipp entered an order sustaining objections to the debtor's amended claim of exemptions in the underlying bankruptcy proceedings.  Judge Lipp found that allowing the amended claim to proceed would prejudice the Trustee and the Estate's creditors.  The Bankruptcy Court held that "a finding of bad faith is so intertwined with the prejudice caused to third parties that the issue is more fittingly dealt with [through] prejudice analysis."  Doc. No. 1 at 6.  Judge Lipp concluded that "[i]n this case, there is not a clear line between the prejudice to the creditors by the amended exemptions and the prejudice to the Trustee."  *Id.* at 10.

On January 19, 2012, Appellant filed a notice of appeal from the order sustaining the objections of the Trustee and creditors to the Amended Schedule C.[3]  *See* Doc. No. 1.  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

---

[3] On January 19, 2012, Appellant filed a motion for the undersigned to recuse himself from ruling on the appeal and for Judge Lipp to recuse herself from presiding over the Debtor's bankruptcy estate.  Doc. No. 3.  On February 3, 2012, Appellant filed an "emergency renewed demand" for the undersigned to recuse himself "from all future proceedings involving the Debtor" and "vacate all prior orders."  Doc. No. 4.  On February 9, 2012, Appellee filed her opposition to the recusal motion.  Doc. No. 5.  On February 14, 2012, this Court entered an Order denying the original recusal motion and the emergency renewed demand recusal motion.  Doc. No. 7.

## DISCUSSION

A district court acts as an appellate court when it reviews a bankruptcy court's final order.  Accordingly, legal conclusions are reviewed *de novo*, whereas findings of fact are reviewed for clear error.  *See In re Kielish*, 258 F.3d 315, 319 (4th Cir. 2001).  "A factual finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.'" *In re Three Flint Hill Ltd. P'ship*, 213 B.R. 292, 297 (D. Md. 1997) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Appellant's memorandum in support of his appeal is not a model of clarity.  At base Appellant appears to argue that Judge Lipp's order sustaining objections to the debtor's amended claim of exemptions allows the Trustee to collect what the Appellant believes is an excessive amount of money for the administration of the bankruptcy estate to the detriment of the Estate's creditors.  Doc. No. 9.  Appellee maintains that this Court should dismiss the appeal because the Appellant failed to identify any legal or factual basis why the Bankruptcy Court's order sustaining objections to the Debtor's amended claim of exemptions is erroneous.

Section 522 of the Bankruptcy Code allows a debtor to claim certain exemptions in the property of a bankruptcy estate.  11 U.S.C. § 522.  "Section 522(b)(1) of the Bankruptcy Code allows states to opt out of the federal exemptions and to limit a debtor's exemptions to those provided under state law." *In re Kleinman*, 272 B.R. 339, 341 (Bankr. D. Md. 2001).  "Maryland has opted out of the federal exemptions." *Id.* (citing MD. CODE ANN., CTS. & JUD.PROC. § 11–504(g) (1998)).  As a result, a debtor filing for bankruptcy protection in Maryland "is afforded the exemptions solely provided under Maryland law." *Id.*

Federal Rule of Bankruptcy Procedure 1009(a) permits a debtor to amend "[a] voluntary petition, list, schedule, or statement . . . as a matter of course any time before the case is closed." "The rule is permissive, with amendment disallowed in limited instances of bad faith by the debtor or where there is prejudice to creditors." *In re Mueller*, 256 B.R. 445, 451 (Bankr. D. Md. 2000); *In re Agee*, 456 B.R. 740, 743 (Bankr. M.D.N.C. 2011) ("[O]rdinarily, a court does not have discretion to deny leave to amend the schedules or to require a showing of good cause before an amendment is allowed.   Nevertheless, as recognized in *Tignor,* exceptional circumstances such as bad faith on the part of a debtor or prejudice to the trustee or creditors may prevent the debtor in bankruptcy from amending the petition or schedules." (citing *Tignor v. Parkinson,* 729 F.2d 977, 978 (4th Cir. 1984), *superseded by statute on other grounds*, VA. CODE ANN. § 34-28.1 (1994), *as recognized in In re Cassell*, 23 F.3d 500 (4th Cir. 1994))).

"The Bankruptcy Code does not define bad faith. Like most questions of motive and intent, bad faith is a question of fact." *In re Ford*, 492 F.3d 1148, 1156 (10th Cir. 2007) (citing *In re Vincent J. Fasano, Inc.,* 55 B.R. 409 (Bankr. N.D.N.Y.1985)).   "Bad faith may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Id.* (citing *Farmers Coop. Ass'n of Talmage v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982)).   "In exemption proceedings, the burden to establish bad faith rests on the party challenging the amended schedule." *Id*. (citing *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir.2005)); FED. R. BANKR. P. 4003(c).

"Neither bad faith nor prejudice are presumed merely because of delay in claiming an exemption or because the amendment, if allowed, will result in property being exempted from the estate." *In re Agee*, 456 B.R. at 743 (citing *Tignor,* 729 F.2d at 979).   Rather, courts will determine whether bad faith exists from the totality of the circumstances. *See id.* (citation

omitted).  One circumstance that courts afford great weight during the determination of bad faith

"is an attempt on the part of the debtor to conceal an asset."  *Id.* (citing *In re Cudeyro,* 213 B.R.

910, 918 (Bankr. E.D. Pa. 1997)).

Courts of this Circuit have not established a clear test to determine when a debtor's

actions constitute prejudice such that a court should deny him or her leave to amend the

schedules.  The Bankruptcy Court for the District of Maryland has found:

> In determining whether the amendment would prejudice creditors,
> the appropriate inquiry is not whether a creditor will recover less
> or be adversely affected by the amendment. Instead, a court must
> determine whether the creditor would be adversely affected by
> having detrimentally relied on the debtor's initial position. Only
> when a creditor has changed its position in reliance on the original
> statement, and would be adversely affected by amendment to that
> statement, may it be said that the creditor will be prejudiced by
> permitting the amendment.

*In re Henry-Chandler*, Bankr. Case No. 05-11878-TJC, 2006 WL 4547188, at *4 (Bankr. D. Md.

Sept. 29, 2006) (citing Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 1009.02).  Prejudice

has also been found in instances: (1) where a debtor exhibits "inordinate delay" in amending his

exemption schedule, *In re Cudeyro*, 213 B.R. at 920; (2) upon "showing harm to the litigating

posture of parties in interest" such that "the parties would have taken different actions or asserted

different positions had the exemption been claimed earlier, and the interests of those parties are

detrimentally affected by the timing of the amendment," *In re Talmo*, 185 B.R. 637, 645 (Bankr.

S.D. Fla. 1995); (3) where a proposed amendment "impairs a trustee in the diligent

administration of the estate," *id.*; and (4) where creditors "suffer an actual economic loss due to a

debtor's delay in claiming his exemption," *In re Arnold*, 252 B.R. 778, 787 (B.A.P. 9th Cir.

2000).  Case law has also established that the prejudice need not be to the bankruptcy estate or to

the creditor body as a whole . . . . Prejudice to the trustee or a single creditor will suffice." *In re Snyder*, 279 B.R. 1, 6 (B.A.P. 1st Cir. 2002) (citations omitted).

Courts limit or deny amendments to exemptions in instances where a debtor's delay in claiming an exception has caused prejudice to a trustee or creditor. *See, e.g.*, *In re Arnold*, 252 B.R. at 789 (holding that any "prejudice [could] be mitigated or eliminated by conditioning allowance of the amended exemption on payment of the trustee's and counsel's fees and costs from assets not otherwise available to the estate"); *In re Henry-Chandler*, 2006 WL 4547188, at *7-8 (finding that the "prejudice to the Trustee [could] be remedied in a manner that [was] less prejudicial to the Debtor than the outright denial of exemption" by allowing for amended exemption contingent upon the Debtor reimbursing the Trustee for reasonable fees and expenses incurred by the delay in claiming the exemption"); *In re Cudeyro*, 213 B.R. 910, 920 (Bankr. E.D. Pa. 1997) ("Once the debtor committed herself to this settlement of the exemption question, and the trustee and creditors took actions in reliance upon this settlement, I conclude that it would be inappropriate to allow the debtor a further amendment.")

These different accounts of prejudice, at base, suggest that "[a]t some point, the debtor's election of either the state or federal exemptions must become irrevocable so as to avoid any unfair prejudice to the trustee and unsecured creditors." *In re Cudeyro*, 213 B.R. at 920.  Courts have held, however, "that prejudice alone does not suffice to disallow the amended exemptions." *In re Henry-Chandler*, 2006 WL 4547188, at *4.  Instead, a court "must balance the prejudice to the debtor of disallowing the exemption against the prejudice to third parties in allowing the exemption." *In re Arnold*, 252 B.R. at 785 (citing *In re Osborn*, 24 F.3d 1199, 1205-06 (10th Cir. 1994)); *see In re Henry-Chandler*, 2006 WL 4547188, at *4.

Here, the Bankruptcy Court found that although "the Debtor never concealed any of the assets that he now seeks to exempt" his amended Schedule C "exempts a previously scheduled asset." Doc. No. 1 at 6. The Bankruptcy Court held that it did not need to make a finding of bad faith in this case "because the Debtor's conduct relied on by the Trustee for a finding of bad faith is so intertwined with the prejudice caused to third parties that the issue is more fittingly dealt with [through] the prejudice analysis." *Id*. at 6-7.

The Bankruptcy Court concluded that Trustee and the Estate's creditors would be adversely affected by the amended Schedule C because they detrimentally relied on the Debtor's initial position. As to the Trustee, the Bankruptcy Court found that "the Trustee has incurred hundreds of thousands of dollars in priority expenses administering the Litigation on behalf of the Estate. These costs have rendered the Estate administratively insolvent." *Id.* at 10. The Bankruptcy Court also maintained that "[h]ad the Debtor initially claimed his interest in the Litigation as exempt, the Trustee might not have pursued the Litigation as an asset of the Estate after assessing the costs and benefits to the Estate." *Id.* at 10-11. The Bankruptcy Court found that "not only did the Trustee rely on the Debtor's initial exemptions when deciding to pursue the Litigation, the Trustee cannot be compensated for her time and effort if the Litigation is now exempted." *Id.* at 11.

As to the creditors, the Bankruptcy Court found that "[t]he record of this case reflects that after the Debtor's failure to comply with the reporting requirements and other duties of a debtor-in-possession, several creditors advocated for the conversion of this case to Chapter 7 so that a trustee be appointed to take control of the Debtor's assets, including the Litigation." *Id.* at 11-12. Multiple creditors argued in favor of conversion to Chapter 7 instead of dismissal "so that a Chapter 7 trustee would be appointed to pursue the Litigation because if left in the hands of the

Debtor, any value would be lost." *Id.* at 13.  The Bankruptcy Court found that "[a]gain, had the Debtor exempted the Litigation prior to conversion, creditors may have advocated for dismissal rather than conversion so that they could pursue the Debtor outside of bankruptcy." *Id.*  As one creditor explained, "the Litigation and his ownership in SCS are the Debtor's only assets, and if they were now held exempt, the last three years would be a complete waste of resources for this Court and for all of the Debtor's creditors." *Id.*  The Bankruptcy Court concluded that "[a]llowing the amended exemption at this late stage would be inequitable and would prejudice those creditors whose rights have attached to the Debtor's assets." *Id.* at 14.

Based on the record before this Court, the Bankruptcy Court did not err in concluding that both the Trustee and the creditors would be prejudiced by allowing the Appellant to amended his Schedule C at this point in the bankruptcy proceeding.  As is made evident in Judge Lipp's decision, the Trustee and Estate creditors have changed their position in reliance on the Appellant's decision not to exempt the Litigation in the original Schedule C, and they would be adversely affected by amendment to the Schedule C.  *See In re Henry-Chandler*, 2006 WL 4547188, at *4 (citing Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 1009.02).  Appellant's attempt to amend his elections of exemptions almost three years after filing his original Schedule C is clearly past the threshold where they "must become irrevocable so as to avoid any unfair prejudice to the trustee and unsecured creditors."  *In re Cudeyro*, 213 B.R. at 920.

Finally, the Bankruptcy Court did not err when it concluded that that the conduct of the Appellant prejudiced the Trustee and the Estate's creditors and that the prejudice could not be remedied in a manner less prejudicial to the Appellee.  Relying on *In re Henry-Chandler*, the Bankruptcy Court found that it could not fashion a remedy where the Trustee and the creditors could be compensated by the Appellant if the amended Schedule C is allowed.  *See* Doc. No. 1 at

11 ("[B]ased on the Debtor's conduct throughout this proceeding and as amply reflected in the record of this case, it would be unreasonable to expect the Trustee and the Debtor to work together in resolving the Litigation.[4]  In sum, unlike the circumstances in *Henry-Chandler*, the Trustee cannot be adequately and fairly compensated if the Amended Schedule C is allowed.") (citing *In re Henry-Chandler*, 2006 WL 4547188, at *8.[5]

## CONCLUSION

For the forgoing reasons, the Bankruptcy Court's decision will be affirmed.  A separate order follows.


Date: July 23, 2012                                    _____/s/_____
                                                        ROGER W. TITUS
                                                        UNITED STATES DISTRICT JUDGE

---

[4] Judge Lipp's finding in this regard is further bolstered by her May 18, 2012, amended order granting in part, and denying in part, the Chapter 7 Trustee's motion for protective order against Stephen C. Sieber.  Bankr. Case No. 07-21192-WIL Doc. No. 657.  Judge Lipp ordered "any communication by the Debtor with the Chapter 7 Trustee, her counsel, their employees, and/or any employee of the Office of the United States Trustee shall be civil, polite and professional" and that the Appellant "is prohibited from sending any written or oral communication to the Chapter 7 Trustee, her counsel, their employees, any employee of the Office of the United States Trustee, and/or any party that is derogatory, defamatory and/or threatens the filing of legal proceedings solely based on the efforts of the Chapter 7 to administer the Debtor's bankruptcy estate."  *Id.*

[5] Although the Bankruptcy Court addressed the Trustee's argument that the Maryland personal injury exemption does not apply to any claim of SCS in the Litigation, this Court will not address that issue because this Court will affirm the order sustaining objections to the Debtor's amended claim of exemptions based on the prejudice analysis.